UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CR 06-145-01 ML |
| | : | |
| HOMMY ACEVEDO | : | |

**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) and 18 U.S.C. § 3401(i) for proposed findings of fact concerning whether Defendant Hommy Acevedo ("Defendant") is in violation of the conditions of his probation and, if so, for a recommended disposition. In compliance with that directive and in accordance with 18 U.S.C. § 3565(a) and Fed. R. Crim. P. 32.1, hearings were conducted on November 8, 2007, April 4, May 2, and August 5, 2008. At the hearings on November 8, 2007, and April 4, 2008, Defendant, both personally and through counsel, waived a violation hearing and admitted that he had violated the terms and conditions of his probation as specified in petitions filed by the United States Probation Department. Based on Defendant's admission, I find that Defendant has violated probation and recommend that Defendant be sentenced to three months imprisonment to be followed by two years of supervised release.

**Facts and Travel**

On April 13, 2007, Defendant appeared before Chief United States District Judge Mary M. Lisi after pleading guilty to three counts of knowingly and intentionally making false statements on a firearms application in violation of 18 U.S.C. § 922(a)(6). <u>See</u> Judgment of 4/13/07 (Document ("Doc.") #8) at 1. Judge Lisi

imposed a sentence of three years probation[1] with the first six months on home confinement with electronic monitoring. See id. at 2-3. As special conditions of release, Defendant was ordered to participate in mental health and substance abuse treatment programs and submit to random drug testing. See id. at 3. A $300.00 special assessment was also imposed and was paid in full on April 18, 2007. See id. at 4-5; see also Probation Violation Report dated October 22, 2007 (the "First Violation Report"), at 1. Defendant's sentence was below the Sentencing Guidelines range of 10 to 16 months.

On October 24, 2007, Senior U.S. Probation Officer Brian Pletcher ("U.S.P.O. Pletcher") filed a Petition for Summons for Offender Under Supervision (the "Petition"), alleging that Defendant unlawfully used marijuana on May 8, May 21, June 25, July 11, August 3, and October 10, 2007. See Petition at 1-2. In response to the Petition, Judge Lisi ordered the issuance of a summons, see id. at 2, and on November 8, 2007, Defendant appeared on the summons before this Magistrate Judge. At that time he was informed of the grounds for the alleged violation. After being so advised, Defendant waived a violation hearing and, both personally and through counsel, admitted to the violations stated in the Petition. This admission satisfied the Court that there was an adequate basis for finding that Defendant had violated the conditions of probation. The Government recommended that the hearing be continued for ninety days to permit Defendant to participate in substance abuse and mental health treatment. The Court accepted this recommendation and advised Defendant that he was being given a chance to demonstrate that he could refrain from using marijuana and all controlled substances. Defendant was cautioned that if he failed to do so he could be required to

---

[1] Defendant's term of probation is scheduled to terminate on April 12, 2010. See Probation Violation Report dated October 22, 2007 (the "First Violation Report") at 1.

appear before the Court sooner than ninety days and that such a development would adversely affect the recommendation which would be made regarding disposition of the violation to which he had admitted.

On February 1, 2008, U.S.P.O. Pletcher submitted a report to the Court advising that Defendant had encountered numerous setbacks (loss of employment, separation from his girlfriend, etc.) and requested that the hearing be continued for an additional sixty days. The Court granted this request, and the matter was re-scheduled to April 4, 2008.

On March 28, 2008, U.S.P.O. Pletcher filed an Amended Petition for Summons for Offender Under Supervision ("Amended Petition"), adding to the original Petition the allegation that Defendant had failed to participate in mental health as well as substance abuse treatment programs as instructed. See Amended Petition at 1-2. Judge Lisi ordered the issuance of a summons in response to the Amended Petition, see id. at 2, and on April 4, 2008, Defendant appeared on the summons before this Magistrate Judge. At that hearing Defendant was informed of the grounds for the alleged new violation. He waived a violation hearing and admitted to the additional grounds for violation.

The Court then received sentencing recommendations from both the Government and the defense. The Government recommended that Defendant be sentenced to a term of three months imprisonment followed by two years probation. Defense counsel argued for release, citing among other reasons that Defendant was steadily employed as a dishwasher at a Providence restaurant. The Court continued the matter until May 2, 2008, and directed that Defendant provide U.S.P.O. Pletcher with his earning statements to verify his employment. In releasing Defendant, the Court indicated that it was attaching significant weight to the representation that Defendant was gainfully employed.

At the hearing on May 2, 2008, the Court stated that it had

received a report from U.S.P.O. Pletcher that was generally favorable as it indicated that Defendant was employed. While the Court noted that Defendant had missed a treatment appointment, U.S.P.O. Pletcher advised that he had recently arranged for Defendant to receive mental health treatment in Pawtucket and that this would be more convenient for Defendant. The Court informed Defendant that it would continue the matter to August 5, 2008, to allow a further opportunity for him to demonstrate that he could comply with the terms of probation, maintain employment, and keep his treatment appointments. The Court indicated that if Defendant satisfied these requirements, it would recommend that he be continued on probation and that he not be imprisoned for the violations to which he had admitted.

On August 5, 2008, Defendant appeared for the hearing. U.S.P.O. Pletcher reported that Defendant had tested positive for controlled substances on four occasions since he was before the Court on May 2, 2008. The Government again recommended that he be sentenced to 90 days imprisonment for the violations to which he had admitted. Defense counsel urged that Defendant be continued on probation. The Court advised Defendant that it would recommend to Chief Judge Lisi that he be imprisoned for three months for the violations. As Defendant continued to be employed, the Court allowed him to remain at liberty until Judge Lisi determines whether to accept this recommendation.

## The Violations

### I. The First Violation (Admitted November 8, 2007)

The First Violation Report alleges that Defendant has violated the following condition of probation in the manner indicated below:

**Standard Condition: Defendant shall refrain from any unlawful use of a controlled substance.**

On May 8, May 21, June 25, July 11, August 3, and October 10, 2007, Defendant unlawfully used marijuana as evidenced by his

own admissions and positive urinalysis test results for THC, an indication of marijuana use. Chief Judge Lisi was notified on August 29, 2007, of the first five positive drug tests and also of the Probation Department's August 28, 2007, compliance review meeting with Defendant in which he was notified that further drug use may result in revocation proceedings.

Defendant submitted specimens for drug testing on the indicated dates, and the test results were positive for THC, an indication of marijuana use. On each occasion, Defendant was candid about his drug use and related that it was due to family and financial stresses. As of October 22, 2007, Defendant was participating in mental health and medication monitoring sessions at Fellowship Health Resources and substance abuse treatment at the Adcare Outpatient Facility. His counselors reported that he was attending sessions faithfully and that he was prescribed Adderal for Adult Attention Deficit Disorder and Lexapro for depression. In addition to THC, the specimen submitted on October 10, 2007, also tested positive for amphetamines. However, the testing laboratory was consulted, and the laboratory personnel reported that Adderal will produce a positive result for amphetamines.

**II. The Second Violation (Admitted April 4, 2008)**

The Probation Violation Report dated March 28, 2008 (the "Second Violation Report"), states that Defendant has violated the following condition of probation in the manner indicated below:

**Special Condition: Defendant shall participate in and satisfactorily complete a program of substance abuse treatment, to include periodic testing.**

Defendant failed to participate in substance abuse treatment as evidenced by verbal and written reports from Adcare Hospital of Worcester on the indicated dates: 11/7/07-no show (showed for drug tests on 11/14/07, 11/21/07, and 11/28/07); 12/12/07-

cancelled, illness; 12/19/07-cancelled; 12/26/07-cancelled, work (showed for drug test on 12/5/07); 1/4/08-no show; 1/23/08-showed 45 minutes late, was not seen (showed for drug tests on 1/16/08 and 1/23/08); 2/20/08-cancelled.

As noted above, the Probation Office was notified by Defendant's clinician at Adcare Hospital of Worcester that Defendant either cancelled or failed to report for substance abuse treatment sessions. It was noted that Defendant would frequently show up just to provide a drug screen, but too late for his session.

**Special condition: Defendant shall participate in and satisfactorily complete a program of mental health treatment as approved by the U.S. Probation Office.**

On the dates indicated, Defendant failed to participate in a mental health treatment program as evidenced by verbal and written reports from Fellowship Health Resources: 11/21/07-cancelled four hours prior due to family issues; 11/28/07-no show; 12/12/07-cancelled; 12/27/07-no show; 1/2/08-no show; 1/9/08-cancelled; 1/16/08-cancelled; 2/13/08-cancelled; 2/14/08-no show; 2/20/08-cancelled; 3/12/08-cancelled; 3/20/08-no show. In addition, on March 24, 2008, Defendant was discharged from mental health treatment for failing to comply with treatment.

As stated above, on the indicated dates, the Probation Office was notified by Defendant's clinician at Fellowship Health Resources that Defendant cancelled or failed to report for scheduled treatment sessions. The clinician also noted that he frequently changed his schedule to accommodate Defendant's employment. However, the sessions were repeatedly cancelled. Due to Defendant's failure to comply with treatment appointments, he was discharged on March 24, 2008.

## Law

### Statutory Provisions

According to § 3565(a)(1) and (2) of Title 18 of the United

States Code ("U.S.C."), if a defendant violates a condition of probation at any time prior to the expiration or termination of the term of probation, the Court may, after a hearing pursuant to Fed. R. Crim. P. Rule 32.1, and after considering the factors set forth in § 3553(a) to the extent that they are applicable, continue probation, with or without extending the term or modifying or enlarging the conditions, or revoke the sentence of probation and resentence the defendant under subchapter A. The Court may sentence a defendant up to the statutory maximum for the original offense. However, the Court must consider the policy statements detailed in Chapter 7 of the sentencing guidelines. In this case, the statutory maximum term of imprisonment for the original offense is ten years. The maximum authorized term of probation that could have been imposed for the original offense is five years. Since only three years of the five year maximum probation term was already imposed, probation can be extended for an additional two years.

Pursuant to 18 U.S.C. § 3565(b)(4), if a defendant, as part of drug testing, tests positive for illegal controlled substances more than three times over the course of one year, the court shall revoke the sentence of probation and resentence the defendant under subchapter A to a sentence that includes a term of imprisonment. Section 3563(e) provides that the Court shall consider whether the availability of appropriate substance abuse treatment programs, or an individual's current or past participation in such programs, warrants an exception in accordance with United States Sentencing Commission guidelines from the rule of § 3565(b) when considering any action against a defendant who fails a drug test.

**Sentencing Guidelines**

Section 7B1.1 of the United States Sentencing Guidelines ("U.S.S.G.") provides for three grades of violations. Section 7B1.1(a) of the U.S.S.G. states that a Grade A violation

consists of (A) conduct which is punishable by a term of imprisonment exceeding one year that (i) is a crime of violence, (ii) is a controlled substance offense, or (iii) involves possession of a firearm or destructive device; or (B) any other offense punishable by a term of imprisonment exceeding twenty years. Conduct consisting of any other offense punishable by a term of imprisonment exceeding one year constitutes a Grade B violation. Conduct constituting an offense punishable by a term of imprisonment of one year or less, or violation of any other condition of supervision, is classified as a Grade C violation. In this case, Defendant has committed Grade C violations.

Pursuant to Section 7B1.3(a)(2) of the U.S.S.G., upon a finding of a Grade C violation, the Court may revoke, extend, or modify probation. Here, Defendant has committed a Grade C violation. Therefore, the Court may revoke, extend, or modify the conditions of probation.

Section 7B1.3(b) provides that in the case of a revocation of probation, the applicable range of imprisonment is that set forth in §7B1.4 (Term of Imprisonment).

If the Court finds that Defendant has committed a Grade B or C violation, §7B1.3(c)(1) states that where the minimum term of imprisonment determined under §7B1.4 is at least one month but not more than six months, the minimum term may be satisfied by (A) a sentence of imprisonment; or (B) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in §5C1.1(e) for any portion of the minimum term. If the Court finds that Defendant has committed a Grade B or C violation, §7B1.3(c)(2) states that where the minimum term of imprisonment determined under §7B1.4 is more than six months but not more than ten months, the minimum term may be satisfied by (A) a sentence of imprisonment; or (B) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to

the schedule in §5C1.1(e), provided that at least one-half of the minimum term is satisfied by imprisonment. The first provision, which allows for alternatives for any portion of the minimum term, applies to this matter.

According to Section 7B1.3(d), any restitution, fine, community confinement, home detention, or intermittent confinement previously imposed in connection with the sentence for which revocation is ordered that remains unpaid or unserved at the time of revocation shall be ordered to be paid or served in addition to the sanction determined under §7B1.4. In this case, there are no outstanding financial obligations. Additionally, Defendant completed his home confinement term on October 12, 2007.

Section 7B1.3(e) of the U.S.S.G. states that when the Court revokes probation and imposes a term of imprisonment, it shall increase the term of imprisonment determined above by the amount of time in official detention that will be credited toward service of the term of imprisonment under 18 U.S.C. § 3585(b), other than time in official detention resulting from the federal probation violation warrant or proceeding.

Section 7B1.3(g)(1) of the U.S.S.G. provides that where probation is revoked and a term of imprisonment is imposed, the provisions of §§5D1.1 - 1.3 shall apply to the imposition of a term of supervised release. Section 5D1.1(a) states that if a sentence of imprisonment of more than one year is imposed, the Court shall order a term of supervised release to follow imprisonment. Subsection (b) provides that the Court may order a term of supervised release in any other case. Section 5D1.2 states that if a term of supervised release is imposed, the length shall be between three and five years for a defendant convicted of a class A or B felony; between two and three years for a defendant convicted of a class C or D felony; or one year for a defendant convicted of a class E felony or class A misdemeanor. In this case, Defendant was convicted of a Class C

felony. Therefore the maximum statutory term of supervised release that may be imposed to follow imprisonment is three years. Thus, if a term of supervised release is to be imposed, the guideline term shall be between two and three years.

Pursuant to Section 7B1.4(a) of the U.S.S.G., the criminal history category is the category applicable at the time the defendant originally was sentenced to a term of supervision. In this instance, Defendant had a criminal history category of I at the time of sentencing. The Revocation Table contained in Section 7B1.4(a) of the U.S.S.G. provides that for a Grade C violation with a criminal history category of I an imprisonment range of three to nine months is warranted.[2]

Section 7B1.5(a) of the U.S.S.G. states that, upon revocation of probation, no credit shall be given (toward any term of imprisonment ordered) for any portion of the term of probation served prior to revocation.

## Discussion

### Government's Recommendation

At the hearings on April 4 and August 5, 2008, the Government recommended that Defendant be sentenced to three months imprisonment to be followed by a term of supervised release for two years. In making this recommendation, Assistant U.S. Attorney Peter Neronha observed that Defendant had effectively sentenced himself by his repeated failures to refrain from using controlled substances. In the Government's view, Defendant's conduct indicated that he did not take the conditions of probation seriously. On the issue of whether Defendant should be detained pending Judge Lisi's consideration of this Magistrate Judge's Report and Recommendation regarding the violations, the

---

[2] The Court of Appeals for the First Circuit has held that Chapter 7 policy statements (including §7B1.4) are advisory rather than mandatory. See United States v. Ramirez-Rivera, 241 F.3d 37, 40 (1st Cir. 2001); United States v. O'Neil, 11 F.3d 292, 302 n.11 (1st Cir. 1993).

Government left this to the Court's discretion.

**Defense's Recommendation**

Defense counsel Kevin Fitzgerald argued that Defendant should be continued on probation. Mr. Fitzgerald noted that Defendant was employed, that he had an apartment, and that he had acquired a vehicle. If he is incarcerated, he will lose all of these things. Mr. Fitzgerald observed that Defendant was not charged with new criminal conduct, but was before the Court for failing to comply with conditions related to substance abuse treatment and mental health treatment. Those conditions, Mr. Fitzgerald contended, were put in place to assist Defendant.[3] Mr. Fitzgerald referred to the instances where Defendant had tested positive for controlled substances as "stumbles" and suggested that the Court should not ignore the test results which were negative. He concluded by stating that Defendant would receive no substance abuse or mental health treatment in the course of the three month prison sentence recommended by the Government and that nothing positive would come from incarcerating Defendant.

**Defendant's Statement.**

Defendant stated that he was embarrassed to be before the Court. He explained that there had been a "few things going in [his] life ...," and that he had "fallen off the horse a few times," apparently referring to his positive urine tests. He indicated that on the occasions when he canceled or failed to keep treatment appointments it was due to work or child care conflicts. Defendant stated that he had recently received a promotion at work with a pay raise and that he was now in charge of the dish room at the restaurant where he was employed and also of a cleaning crew. In response to the Court's inquiry as to how

[3] The presumed implication of this remark appears to have been that a violation of these conditions should not be used to send Defendant to prison.

many hours he worked per week, Defendant responded that a month ago it had dropped to as low as fifteen or sixteen hours per week, but now he was guaranteed to have at least forty hours per week.

**Court's Recommendation**

As the Court told Defendant at the hearing, his file is one of the thickest violation files which this Magistrate Judge has seen. The Court has repeatedly continued this matter to allow Defendant to demonstrate that he can comply with the conditions of probation, especially those which prohibit the use of controlled substances. Instead of demonstrating compliance, Defendant's problems with controlled substances have continued. This Magistrate Judge concludes that he has no choice but to adopt the recommendation of the Government. Defendant's repeated use of controlled substances cannot be tolerated. While the fact that Defendant will lose his employment is regrettable, this Magistrate Judge repeatedly warned Defendant over the last several court appearances that he needed to comply with the conditions of probation in order for the Court to recommend that he be continued on probation. The warnings appear to have had little effect. If other defendants perceive that conditions of probation or supervised release can be repeatedly violated, despite warnings from the Court, compliance by these defendants with their conditions of probation or supervised release is likely to decline. Accordingly, this Magistrate Judge recommends that Defendant be sentenced to three months imprisonment to be followed by two years of supervised release.

With regard to the condition that Defendant participate in mental health treatment, his mental health counselor has reported to the Probation Department that Defendant continues to associate with persons who use marijuana and other controlled substances and that he is unwilling to end these relationships. The Probation Department questions whether continuing to expend

financial resources to provide Defendant with mental health treatment is warranted. The Court agrees that if Defendant is unwilling to follow the suggestions provided by his mental health counselor, it makes little sense to continue to spend scarce dollars to provide such treatment. Accordingly, for that reason, I recommend that mental health treatment no longer be provided and that Defendant's participation in such treatment not be included as a condition of supervised release.

## Conclusion

After considering the factors set forth in 18 U.S.C. § 3553(a) and for the reasons expressed above, I recommend that Defendant be sentenced to three months imprisonment to be followed by a period of supervised release for two years. I further recommend that Defendant not be required to participate in mental health treatment as a special condition of supervised release as he is unwilling to follow treatment recommendations.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
August 12, 2008